AMEY ANDREWS, *et al.*, v. WM. ALCORN, *as Admin'r, &c.*

1. PRACTICE; *Attaching Copy of Note to Petition; Question in Supreme Court.* In an action on two promissory notes and a mortgage, the petition did not contain a copy of either of the notes or the mortgage, and no copy of either was attached to or filed with the petition, and no reason was given why such copies were not furnished, (Code, §§ 118, 123,) and no question was raised in the court below as to the necessity for such copies, and no ruling of the court below upon any such question has been assigned for error in the supreme court: *Held,* that no such question can be raised in the supreme court merely by a discussion of the questions in the briefs of counsel. No such question can be raised in the district court on demurrer.

2. ———— *Two or more Notes, and Mortgage to secure the same, constitute but One Cause of Action.* Where a petition, which in fact contains but one cause of action, with a proper prayer for relief, is divided into three counts, the first of which states a cause of action and the other two do not, but which, if taken in connection with the first count, modify and enlarge the cause of action stated in the first count, and these three counts are headed respectively as follows: "1st cause of action," "2d cause of action," "3d cause of action," and the defendant moves the court to compel the plaintiff to elect upon which cause of action he will proceed, and also demurs to the petition on the ground "that there are not facts sufficient stated in either of said counts to constitute a cause of

action," and the court overrules both said motion and said demurrer, and afterward a judgment is rendered in accordance with the prayer of the petition, and just such a judgment as would be proper if the words "1st cause of action," "2d cause of action," and "3d cause of action," were stricken out of said petition, *held*, that although the district court may have erred in disregarding said words, still the error is not of such a substantial character as will require a reversal of the judgment by the supreme court.

3. HOMESTEAD; *Purchase by Wife; Mortgage for Purchase-Money.* Where a wife purchases a piece of land and takes the title in her own name, and at the same time executes two promissory notes for the unpaid purchase-money, and also executes a mortgage on the property to secure the payment of said notes, and said wife, at the time she purchases said property, intends to make the same her homestead, and afterward does, with her husband, occupy the same as her homestead, *held*, that notwithstanding said intention and said occupancy the mortgage may be foreclosed, and the land sold to pay the unpaid purchase-money for which said notes and mortgage were given.

4. ———— *Interest of Husband Foreclosed.* The husband did not execute said notes or said mortgage, but the mortgage, nevertheless, may be foreclosed and the land ordered to be sold free and clear from all right, title and interest of the husband in or to said property, he being a party to the suit on his own motion.

## Error from Bourbon District Court.

FORECLOSURE of mortgage, brought by Robert Hamilton, in his lifetime. Hamilton sold the mortgaged premises to *Amey Andrews*, a married woman, and she gave him her two notes, each for $400, one payable February 14, 1873, and the other February 14, 1874, and executed a mortgage on said lands to secure said notes. The action was commenced in May, 1873, against said *Amey* alone. Afterward *Jacob Andrews*, the husband, was joined as a co-defendant, at his request. Before the trial Hamilton died, and *Alcorn*, as administrator, was substituted. The opinion of the court contains a sufficient statement of the pleadings and proceedings. Trial at the September Term 1873 of the district court, (C. W. B., judge *pro tem.*, presiding.) Personal judgment against defendant *Amey Andrews* for the amount of the note past due, and judgment against both defendants of fore-

closure, and for the sale of the mortgaged premises, and both defendants appeal, and bring the case here on error.

*Hulett & McCleverty*, for plaintiffs in error:

1. This case presents first this question of practice: How many causes of action are there in a note and mortgage, or in several notes and mortgage? The petition below makes three separate causes of action, one upon the note then past due, one upon the second note not yet due, and a third upon the mortgage itself. We maintain that an action upon any number of notes and the mortgage securing them, known as "the foreclosure of a mortgage," is a special statutory proceeding, in the nature of a bill in chancery, and constitutes but *one cause of action*, the several notes making up the whole amount secured by the mortgage, and only requiring a statement of the facts, in "plain and concise language," in one count — the allegation of indebtedness upon the notes, and that the mortgage was given to secure them, being the material facts. All the forms and precedents indicate this as the proper practice. (See similar statute of Iowa, §§ 3660, 3661, Rev. of 1860; 1 G. Greene, 545; 22 Iowa, 448.) The second count in the petition is based upon the note coming due February 14th 1874; and that a note *not yet due* can be a good cause of action seems absurd. If there was then but *one* cause of action, and the pleader divided it into *three*, the court erred in overruling the motion to compel plaintiff to elect upon which cause of action he would proceed, and which remedy he would pursue. (8 Ohio St., 215.)

2. The court also erred in overruling the separate demurrer of Amey Andrews, it being to each count separately. If there was but one cause of action in all, the demurrer should have been sustained at least to the second and third counts, the second count being upon a note not due, and the third upon a mortgage securing it. Each count in a petition must be good in itself, and where a pleader must restate a count or refer to it in order to plead another, then they both make but one. (1 Handy, 575.) In the case at bar the notes are first

23 — 13 KAS.

set out in two separate counts, and the third count begins by saying that "*said* notes were given for purchase-money," and "that to secure the payment of *said* notes" the mortgage was given—showing that the pleader was compelled to refer to the other two in order to make a third count at all, which is the exact point met and decided in 1 Handy, 575. The manner of pleading in this petition, we think proves the logic of 1 Handy, and that a foreclosure should be in one count, stating all the facts, and as a part of those facts that the notes and mortgage had been given and were due. The fact that the mortgage and notes constitute but one contract, would seem to determine the number of counts. As to being one contract, see 10 Iowa, 443; 8 Kas., 456. The real and well-understood object of a foreclosure is, to obtain an order to sell the mortgaged premises to pay the debt; and to get the benefit of that, as to the whole debt, all the facts should be stated in one count, as upon the mortgage contract alone, the notes being part of such contract.

3. The petition neither contains nor has attached a copy of the notes, as pointed out in the code as necessary in such cases. If this is necessary in such a pleading, then the demurrer would be good as to the first count also; and we think it is necessary, in declaring upon a note or account alone, either to incorporate or attach a copy.

4. The court also erred in declaring the amount of the notes to be a lien upon the premises described in the pretended mortgage, and in ordering the same to be sold freed and cleared of all claim and interest of both defendants, for the reasons that the premises were the homestead of the defendants, and the mortgage was executed by the wife only. This court has decided in *Edwards v. Fry*, 9 Kas., 425, and in *Monroe v. May, Weil & Co.*, 9 Kas., 474, "That a purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability." The admitted facts are, that the premises were purchased with the intention of making them the homestead of the defendant Amey Andrews and her family, and that

they had been actually occupied from the time of purchase since as such homestead. The findings and admitted facts bring this case exactly within the terms of the cases in 9 Kas. above cited, and make the property in the case at bar a homestead. And it has been settled that a mortgage upon a homestead executed by the husband or wife alone *is void:* Const., art. 15, § 9; 5 Kas., 248, 599. These 5th and 9th Kansas cases decide that the constitutional exemption should be liberally viewed and construed; and if so, then the exceptions should be strictly construed; and the exception refers only to *non-exemption* from *forced sale* for the purchase-money, and not to the creation of a *lien.* Sec. 9 of art. 15 says too that a *lien* upon a homestead is obtained only "by the consent of both husband and wife, when that relation exists," or at least it means that. Then if a *lien* can only be created by the consent of both, this mortgage was no lien, since it was by the consent of one only. As we understand said § 9, it is, that when suit is brought for purchase-money, even of a homestead, the court should make a finding of that fact, and then the law would not allow an exemption to hold against the execution. But it does not, nor does the statute empower the court to decree that such money is a *lien,* for if so it would be in effect to hold that we have vendors' liens in Kansas, which this court has decided not to be true. Then, if the court could not adjudge purchase-money to be a lien, neither can it adjudge a void mortgage to be a lien.

5. Again, the court erred in ordering the premises to be sold, freed and cleared of all right and title of both defendants. Jacob Andrews did not execute the mortgage; and as to the validity of a deed or mortgage not executed by the wife, see *Hait v. Houle,* 19 Wis., 472, and cases there cited, which will apply equally to the husband, since in this state the husband and wife stand in the same relation to each other. At the very least then, so much of this decree as bars the husband who did not execute the mortgage should be modified.

*McComas & McKeighan*, for defendant in error:

1. The first error complained of by the plaintiff in error is, that the court erred in overruling the motion of the defendant in the court below, to compel the plaintiff to elect upon which cause of action he would rely. And in support of this proposition, it is agreed that the petition did not disclose but óne cause of action! The counsel fail to note the distinction between "one cause of action" improperly subdivided into two or more causes, and a *fictitious restatement* of the same cause of action in a second count, as was the case in *Sturgis v. Burton*, 8 Ohio St., 215, to which he refers.

2. The demurrer to the second cause of action was properly overruled, because in fact and in law, and according to the argument of the plaintiff in error, there was but one cause of action stated in the petition. The facts as stated in the petition are one cause of action. The facts are stated in logical order, and the numbering of the paragraphs on the margin of the petition as "first," "second" and "third" cause of action, will be disregarded as surplusage. The errors complained of are immaterial, and do not prejudice the substantial rights of the plaintiffs in error. This is the law of appellate procedure. (Powell on Appellate Proc., 125.) It is the repeatedly announced doctrine of this court. (*K. P. Rly. Co. v. Pointer*, 9 Kas., 621.)

3. It is contended in this case that the mortgage is void because it was upon a homestead, and is not signed by the husband. There is nothing in the record to show that the land was occupied as a homestead at the time this mortgage was given. The mortgage is dated the 14th day of February, 1872; it was given for the purchase-money; the occupation commenced upon the same day. This is all the record shows. It does not then affirmatively appear that it was occupied as a homestead when the mortgage was given. The inference would be, that the property was first conveyed to Mrs. Andrews; that she gave these notes and mortgage for the purchase-money, and then moved into it as a homestead:

this all occurring in one day. The doctrine of *Edwards v. Fry,* and *Monroe v. May,* 9 Kas., does not fit this case. This court also holds if an attachment intervene between the purchase and occupancy, the homestead does not defeat the attachment. (*Bullene v. Hiatt,* 12 Kas., 98.) It becomes a homestead *ab initio* by the occupancy. But if a woman purchase a piece of land with the intent to occupy it as a homestead, she may dispose of it as she pleases *before it is so occupied.* She may change the intent, and never so occupy it. Then, as the record does not show (and error must be made affirmatively to appear,) that this land was "occupied" as a homestead at the time the mortgage was given, it does not require the joint act of husband and wife to alienate it, even if it had not been given for the purchase-money. But this was given for the purchase-money, and the homestead exemption has no validity as against debts of this class.

4. The other error complained of is, that a copy of note and mortgage was not set out in the petition. There are two answers to this: First, the point was not raised in the court below; second, the law does not require a copy of the note and mortgage to set out in the petition. (Nash's Pl., 787; Swan's Pl., 200.)

The opinion of the court was delivered by

VALENTINE, J.: This was an action on two promissory notes and a mortgage. The judgment was in favor of the plaintiff, and the defendants now bring the case to this court. The petition did not contain a copy of either of the notes or the mortgage; no copy of either was attached to or filed with the petition, and no reason was given why such copies were not furnished. (Code, §§ 118, 123.) But as no question was raised in the court below as to the necessity for such copies, and as no ruling of the court below upon any such question has been assigned for error in this court, no such question can now and for the first time be raised in this court, merely by a discussion of the question in

1. Attaching copies of notes.

the briefs of counsel. No such question can be raised in the district court on demurrer.

The petition below was divided into three counts, headed respectively as follows: "1st cause of action," "2d cause of action," and "3d cause of action." The first count set forth the substance of one of said notes, which was then due, and stated a good cause of action. The second count set forth the substance of the other note, but did not state any cause of action, for the reason only that this note was not yet due. The third count set forth the substance of said mortgage, but probably did not state facts sufficient to constitute any cause of action thereon. The prayer for relief was just what it should have been, if the words "1st cause of action," "2d cause of action," and "3d cause of action" had been stricken from the petition, and everything else stated in the petition had been stated (as it should have been stated) in one count only. And the judgment was in accordance with the prayer for relief. The defendant Amey Andrews moved to require the plaintiff to elect upon which cause of action he would proceed. The court overruled the motion. Said defendant then filed a demurrer, demurring separately to each and every count in plaintiff's petition set forth, and assigned as grounds of demurrer that there were not facts sufficient stated in either of said counts to constitute a cause of action. The court overruled the demurrer. Now while we think that the court might properly have sustained and perhaps ought to have sustained both said motion and said demurrer, (the demurrer however, only as to the second and third counts,) as a punishment to the pleader for negligently inserting the useless words, in fact worse than useless words, "1st cause of action," "2d cause of action," and "3d cause of action," in his petition, yet we do not think that the court committed any substantial error by overruling said motion and said demurrer. Only one cause of action was in fact stated in the whole of said petition. It is true, the first count taken alone stated a cause of action—an ordinary cause of action on a promissory

*[margin note: 2. Foreclosure of mortgage: Notes and mortgage constitute but one cause of action.]*

note; but it is also true that the whole of the petition taken together (with these useless words stricken out,) stated *only one cause of action* — an ordinary cause of action on two promissory notes, (one due and the other not yet due,) and a mortgage executed to secure their payment. While the facts stated in the first count constituted a cause of action, the facts stated in the other two counts (so-called,) simply modified and enlarged that cause of action, and as *all the facts stated in the whole petition constituted but one cause of action they should all have been stated in one count.* We suppose the court below treated said useless words merely as surplusage, and in this the court perhaps may have erred; but, the error was slight, and as substantial justice was done to all the parties, we shall not now reverse the judgment of the court below merely on account of such immaterial error. (Code, §§ 140, 304.)

Said promissory notes were given for the unpaid purchase-money of a certain piece of land. The mortgage was given on the same land, and at the time of the purchase thereof, to secure the payment of said notes. The defendants below also claim that the defendant Amey Andrews purchased the land with the intention of making it her homestead; that afterward she did make it her homestead; that said mortgage was executed by herself alone, without her husband, Jacob Andrews, the other defendant, joining with her in its execution; and therefore they claim that said mortgage is void. There are at least two answers to this claim. First, The mortgage was given for the unpaid purchase - money of the mortgaged premises at the time of the purchase. (*Pratt v. Topeka Bank,* 12 Kas., 570.) Second, Her intention to make said property her homestead was not her only intention. She also at the same time entertained the intention as expressed in her mortgage to pledge the property she was then purchasing as a security for the unpaid purchase-money which she was to pay on her said intended homestead. Her intention to make the property her homestead was modified by her other intention to pay an honest debt contracted in obtaining her in-

*3. Homestead; purchase by wife. Mortgage by wife alone.*

tended homestead. Both intentions can stand together and be enforced as really one intention; that is, the property can be held as her homestead subject to the payment of the purchase-money. She did not intend when she purchased the property, as the mortgage shows, to cheat and defraud the vendor out of the purchase-money. And she did not intend, as the mortgage shows, to make her homestead right paramount to the lien of the vendor which she expressly gave him on the property for the purchase-money. But her intention was, as the mortgage shows, decidedly the contrary. It has already been decided in this court, that at any time before the property actually becomes a homestead, a lien, which could not be created on a homestead, may be created on such property the same as on any other property; and the fact that the property afterward becomes a homestead will not destroy the lien thus previously created. (*Bullene v. Hiatt,* 12 Kas., 98.) And a vendor's lien on real estate may be created at the time of the purchase of the same, by the express contract of the parties to the purchase, and sale. (*Smith v. Rowland,* supra, 245.)

The title to said property, after Mrs. Andrews purchased the same, was wholly in her. Her husband Jacob Andrews had no interest in the property except such as he might have by virtue of being her husband, and by virtue of residing on and occupying the property as a homestead. Mrs. Andrews alone executed said notes and mortgage. The court below rendered a personal judgment against Mrs. Andrews for the amount due on the first note, but rendered no personal judgment against Jacob Andrews. The court however rendered a judgment against both of the defendants that the amount of the notes was a lien on the mortgaged premises, and that said premises should be sold free and clear of and from all right, title and interest, of both of the defendants to discharge said lien, etc. Of this judgment the defendant Jacob Andrews now complains, and he complains merely on the ground that he was not a party to said notes or mortgage. Now he was in possession of the

4. Notes and mortgage by wife. Interest of husband.

property, claiming it as his homestead, and was a proper party to the suit, and to the judgment; and he was made a party to the action on his own motion, after the suit had been previously commenced against his wife alone; and he had no interest in the property which could not be destroyed by a valid execution sale against his wife. In this state all property not exempt from execution or other final process may be sold at judicial sale. (Civil Code, § 443.) And as we have before seen, this property, by virtue of being a homestead, is not exempt from sale under a judgment rendered for the unpaid purchase-money, and it is not claimed that it is exempt for any other reason. All right, title and interest of Amey Andrews may therefore be sold on execution or other final process, and such sale will divest Jacob Andrews of all his interest in the property, as he holds wholly under his wife. In this state, when the real estate of a husband or wife is sold at judicial sale, there is nothing left for the other to inherit or receive after the death of the one who owns the real estate. The rights of husband and wife are precisely alike in this respect. (Gen. Stat., 395, ch. 33, § 28.) And the statute clearly shows that the wife on the death of her husband obtains no interest in any real estate ever owned by the husband, if the same had previously been sold to pay his debts on any execution or other final process. (Gen. Stat., 393, ch. 33, § 8.) Therefore, as the court below had a right to render a judgment against the wife, in whom the title to the property was vested, ordering the property to be sold free and clear from all right, title and interest held by the wife therein, we think it necessarily follows that the court also had a right to render a judgment against the husband, who held solely under his wife, ordering the property to be sold free and clear from all right, title and interest held by him in the property. Such a judgment would seem to be necessary to bar the husband's homestead interest.

The judgment of the court below is affirmed.

All the Justices concurring.