LORING DALTON, *Appellee*, v. THE LAWRENCE NATIONAL BANK, a Corporation, IRVING HILL and JUSTIN D. HILL, *Appellants*.

No. 37,895

MARY DALTON MURPHY, *Appellee*, v. THE LAWRENCE NATIONAL BANK, a Corporation, IRVING HILL and JUSTIN D. HILL, *Appellants*.

No. 37,896

MARGERY DALTON HURST, *Appellee*, v. THE LAWRENCE NATIONAL BANK, a Corporation, IRVING HILL and JUSTIN D. HILL, *Appellants*.

(219 P. 2d 719)

Opinion filed June 10, 1950.

*C. C. Stewart,* of Lawrence, argued the cause, and *O. K. Petefish,* of Lawrence, was on the briefs for the appellants, Irving Hill and· Justin D. Hill; *Henry H. Asher,* of Lawrence, argued the cause, and *C. M. Gorrill* and *Alan F. Asher,* both of Lawrence, ·were with him on the briefs for the appellant, The Lawrence National Bank, a corporation. .

*Raymond F. Rice,* of Lawrence, argued the cause, and *Robert B. Oyler,* of Lawrence, was with him on the briefs for the appellees.

The opinion of the court was delivered by

, · SMITH, J.: These were actions to recover money. They were heard together in the court below and consolidated here. All three defendants demurred to the plaintiff's petition in each case on the ground that it did not state facts sufficient to constitute a cause of action and showed on its face the cause was barred by the statute of limitation and in case of the bank on account of misjoinder of causes of action. These demurrers were overruled. All three defendants have appealed.

The pleadings in each action are identical, so those for one case only will be stated. The actions grew out of a living trust created by Mary G. Bowersock during her lifetime and to end five years after her death.

Justin D. Bowersock, Irving Hill and Paul A. Dinsmoor were trustees of this trust. Dinsmoor died, so Hill and Bowersock

continued to act. Amongst the assets of this trust were 900 shares of stock in the Lawrence Paper Company. Amongst the various beneficiaries were Margery B. Dalton, the daughter of Mary. She was the beneficial owner of 144 of these shares. By her will she created a testamentary trust in which she named defendant bank as testamentary trustee. In this trust she disposed of the above 144 shares. Her husband elected not to take under the will, so only seventy-two shares were left in the trust. She left four children, and provided in her will that each of these children should be the beneficial owner of an equal share of this stock. Hence each child became the beneficial owner of 18 shares. These cases involve a claim by three of these children that they were each fraudulently caused by the defendants to sell these 18 shares for less than they were worth. One of the children of Margery did not bring any action.

The petition was filed and the action begun on June 10, 1948. It alleged the residence of the parties and incorporation of the bank; that Irving Hill was and at all times had been president of the bank and Justin D. Hill was a son of Irving and for five years had been a director of the bank; that plaintiff was the son of Margery B. Dalton, who was the daughter of Mary G. Bowersock, both deceased; that in the will of Margery B. Dalton the bank was named testamentary guardian and trustee for the four children of Margery and accepted the appointment and acted as such during the minority of plaintiff, and at the time the action was filed was so acting.

The petition then alleged that Mary G. Bowersock by her deed of trust on January 1, 1923, created a trust for the use and benefit of her six children, including Margery B. Dalton, for the lifetime of Mrs. Bowersock and for five years thereafter; that it was further provided that at the expiration of five years from the death of Mary, the principal of the trust estate with an exception not now important was to be conveyed to the children; that Justin D. Bowersock, Irving Hill and Paul A. Dinsmoor were designated trustees and subsequent to the death of Dinsmoor the other two continued to act; that when five years had elapsed after the death of Mary G. Bowersock, or on September 3, 1942, a trust extension agreement was executed by all of the beneficiaries, including the defendant bank as guardian and trustee for plaintiff and for the other children of Margery B. Dalton, deceased; that the trust·extension agreement

provided for the immediate distribution of certain of the assets in the trust and for the continuance of it as to the remaining assets; that included in the securities to be immediately distributed were 900 shares of the capital stock of the Lawrence Paper Company; that of these 900 shares, seventy-two were distributable to the defendant bank as trustee under Margery's will for the benefit of the four children; that no distribution of the 900 shares was made by the trustees, Justin D. Bowersock and Irving Hill, of the Mary G. Bowersock trust; that the defendant, Irving Hill, objected to the issuance of certificates representing this stock to the beneficiaries and by reason of this objection the stock continued to stand in the name of Mary G. Bowersock trust for more than two years subsequent to September 3, 1942; that defendant, Irving Hill, was desirous that the stock of the Lawrence Paper Company to be distributed to the bank as testamentary trustee be sold by the bank and to that end procured from the attorney representing the bank an opinion that such stock might be sold by the bank; that the 900 shares referred to constituted 22½ percent of the 4,000 shares issued by the corporation; that 1,350 shares were owned by Irving Hill, Hortense B. Hill, his wife, and Justin D. Hill, referred to as the Hill interests, and 1,350 shares were owned by Mary B. Dinsmoor, Dorothy D. Patton, her daughter, and E. W. Patton, husband of Dorothy D. Patton, referred to as the Dinsmoor interests; that the holdings of the Hill and Dinsmoor interests were equal and Irving Hill and Justin D. Hill for the purpose of obtaining control of the company desired to purchase additional stock in an amount sufficient to vest in the Hill interests the ownership of more than 2,000 shares and to accomplish this Justin D. Hill, with the knowledge of Irving Hill, set out to acquire the 900 shares of stock already referred to in the Mary G. Bowersock trust, with the exception of 144 shares in which Mary B. Dinsmoor was beneficially interested and the like amount of stock in which Hortense B. Hill was beneficially interested.

The petition further alleged that Justin D. Hill, with the consent of Irving Hill, negotiated with Justin D. Bowersock for the purchase of 234 shares of the stock, to which he was entitled, and after negotiations extending over several years bought it for $107.50 per share, which did not represent its actual value; that thereafter on May 19, 1944, defendant, Justin D. Hill, caused to be written on the stationery of defendant bank a letter to the plaintiff wherein the defendants falsely stated that the Lawrence Paper Company stock was

not stock which could be held in the Dalton trust; that there was no market for it and it had not been a dividend payer because the earnings had been used to develop the business; that the value of the shares had been determined by examination and audit and as a result 234 shares of the stock in which Justin D. Bowersock had been beneficially interested had been sold to Justin D. Hill at the price of $107.50 per share.

. The petition further alleged that in the communication defendants proposed the sale to Justin D. Hill at the price of $107.50 of the eighteen shares of stock in which the plaintiff was beneficially interested.

The petition further alleged that the Lawrence Paper Company's stock actually was unlisted and closely-held, with no established market; that it was the duty of the defendant bank as trustee for the plaintiff in connection with any proposed sale of it to advertise it and to invite bids and to sell it only at a price that would reflect its actual value; that the defendant bank disregarding its duties as trustee and acting solely in the interest of the defendants, Justin D. Hill and Irving Hill, neither advertised the stock for sale nor made any attempt to obtain bids; that defendant, Irving Hill, had recommended to the bank the sale of the 72 shares to the defendant, Justin D. Hill, and in pursuance of this recommendation and at the instance of defendant, Justin D. Hill, the bank directed to this plaintiff the communication referred to and thereafter sold the stock privately to Justin D. Hill at the price of $107.50 per share, which did not represent the actual value; that defendant, Irving Hill, was on May 19, 1944, and had been since the incorporation of the company in 1931, its president, and the defendant, Justin D. Hill, was on that date and had been since 1933 a director and since 1942 a vice-president of the company; that Irving Hill and Justin D. Hill were both active in the management of the company and they knew on May 19, 1944, that the book value and the actual value of this stock was greatly in excess of $107.50 per share; that the company was in excellent financial condition; that its current assets amounted to $745,000 as compared to the current liabilities of $65,000; that it had fixed assets; that it had a book value in excess of $225 per share; that it was a going concern and for many years had been earning large profits and no dividends had been paid because of the large salaries and bonuses paid to the employees and officers of the company, including Irving Hill and Justin D. Hill "that notwithstanding the knowledge of such facts and their fiduciary duty as

directors and managing officers to make disclosure of the same to any stockholder of the stock they were seeking to acquire, said defendant, Irving Hill, and Justin D. Hill, did not, either in the communication to this plaintiff of May 19, 1944, hereinabove referred to, orally or otherwise, disclose to this plaintiff any of the facts hereinabove set out or any other facts bearing upon or affecting the value of the stock of the said Lawrence Paper Company."

The petition further alleged that plaintiff had no knowledge or information as to the business of the Lawrence Paper Company and the earnings and profits of said company or the amounts of the salaries and bonuses paid its officers; that the plaintiff relied upon the statements made by the defendant and believed that Irving Hill and Justin D. Hill had made a full and fair disclosure to him of all information possessed by them affecting the value of the stock and believed the bank had fully discharged its fiduciary duties as trustee; that during the months of May and June, 1944, the actual market value of the Lawrence Paper Company's stock was $400 per share and as a result of their joint and concurrent acts as set out and in pursuance of the conspiracy participated in by all of the defendants the eighteen shares of the paper company's stock were sold by the bank to defendant, Justin D. Hill, at a price of $107.50 per share; that the funds for the purchase of the stock were furnished and advanced in whole or in part by defendant, Irving Hill. The petition then contained the following allegations:

"That this is an action for relief on the ground of fraud and that this plaintiff did not discover any of the facts herein relied upon as constituting such fraud nor any other facts which, if investigated, would have led to knowledge of such fraud until subsequent to the 12th day of June, 1946. That this plaintiff was unable, by ordinary diligence, to discover said fraud by reason of the fact that the facts constituting such fraud were peculiarly within the knowledge of the defendants and were concealed by them from this plaintiff."

The petition then alleged that by reason of the facts set out plaintiff had sustained actual damages in the amount of $5,265 and the acts of the defendants described involved a violation of fiduciary duties and constituted a willful invasion of the rights of the plaintiff and plaintiff was entitled to punitive damages in the amount of $5,000. Judgment was prayed for in the amount of $10,265.

To this petition the several defendants filed a series of motions to strike and to compel the plaintiff to make definite and certain. These motions were sustained in part and overruled in part. They will be noticed at this point.

All three defendants asked that the plaintiff be ordered to amend his petition by setting out a copy of Margery B. Dalton's will, Mary G. Bowersock's deed of trust, the trust extension agreement and a copy of the letter written by the bank. This motion was overruled except as to a copy of the letter. A copy of it was ordered attached and was attached to the amended petition. They also asked that five paragraphs be stricken and that two different parts of another paragraph be stricken. This motion was sustained as to certain paragraphs not now important and the allegation "that by and as a result of their joint and concurrent acts, as herein above set out, and in pursuance of a plan and conspiracy, participated in by all of the defendants herein" was ordered stricken.

All three defendants filed a further motion in which they asked that the plaintiff be required to elect as to whether he was attempting to recover on the ground that defendants had breached their duty as fiduciaries or on the ground of fraud claiming these two theories were treated in separate paragraphs. This motion was sustained.

Subsequently and on January 14, 1949, an amended petition was filed. This petition followed pretty generally the allegations of the original petition except that it alleged, as follows:

"The defendants, Irving Hill and Justin D. Hill, acting and conspiring together, set out to acquire and purchase, in the name of the said Justin D. Hill, sufficient of the 900 shares of said Lawrence Paper Company stock held in the Mary G. Bowersock Trust to vest in the Hill interests and family, consisting of the defendants, Irving Hill and Justin D. Hill and Hortense B. Hill, the wife of Irving Hill, the ownership of more than 50% of the stock of said Paper Company and thereby to secure control of said company."

And further—

"The defendant, Justin D. Hill, procured and caused to be written and the defendant, The Lawrence National Bank, coöperating and conspiring with the defendants, Irving Hill and Justin D. Hill, directed and mailed to this plaintiff, on May 19, 1944, on the stationery of said Bank and over the signature of its Trust Officer. . . ."

Also, a copy of letter of the bank under date of May 19, 1944, was attached.

To this amended petition defendant bank filed a motion to strike nine separate allegations. In the main, the basis of this motion was that the allegations should be stricken because they were contradictory to the statements in the letter and some of them were irrelevant and immaterial. This motion was overruled except as to an allegation that defendants had stated the stock of the Lawrence

Paper Company was not stock which should be held in the Dalton trust. That allegation was ordered stricken.

The bank also filed a motion asking that the plaintiff be required to make his petition more definite and certain by setting out facts relied on as constituting such alleged fraud or any other facts alleged to have been concealed from him by the defendant, the Lawrence National Bank, which were discovered by the plaintiff subsequent to the 12th day of June, 1946, of which the plaintiff did not theretofore have full knowledge, and facts the plaintiff was unable by ordinary diligence to have discovered prior to the 12th day of June, 1946, and such facts so discovered subsequent to the 12th day of June, 1946, were peculiarly within the knowledge of the defendant, the Lawrence National Bank, and were concealed by said defendant, the Lawrence National Bank, from the plaintiff and, the date and time at which the plaintiff discovered any of such alleged facts.

This motion was overruled.

At the same time defendant Irving Hill, filed a motion asking that the plaintiff be required to elect whether he relied on the fact that he and Justin Hill breached their duty as fiduciaries or on fraud, and whether he expected to prove that he was the beneficial owner of the 18 shares of stock or whether he expected to prove that he owned the stock and to require plaintiff to elect whether he relied on the conspiracy between Irving Hill and Justin Hill for obtaining more than 50 percent of the Lawrence Paper Company or whether the company was to obtain the stock for the Hill interests without paying an adequate price, to require him to elect whether he expected to prove that defendant bank sold the stock secretly or that the defendants proposed and suggested the sale by letter; that plaintiff be required to set out a copy of the Mary G. Bowersock's deed of trust, the trust extension agreement of September 3, 1942, and the will of Margery Dalton and to strike from the petition the allegation "That the funds for the purchase of said stock were furnished and advanced, in whole or in part, by the defendant, Irving Hill" and to strike from the petition the allegation "That the stock of said Lawrence Paper Company was not stock which should be held in said Dalton Trust" and also the allegations:

"That the value of said shares had been determined by examination and audit and did not exceed $107.50 per share, and that as a result of such examination and audit the 234 shares of such stock in which Justin D. Bower-

sock was beneficially interested had been offered by him to Justin D. Hill at said price of $107.50 per share."

And to require plaintiff to make his petition more definite and certain by stating what acts of fraud called upon he discovered after June 12, 1946, and exactly when he discovered them and to state what facts which, if investigated, would have led to knowledge of such fraud he discovered subsequent to June 12, 1946, and exactly when he discovered such facts.

Defendant, Justin Hill, filed substantially the same motions. They were all overruled except for the allegation, which was ordered stricken, as already noted.

The bank demurred on the ground of misjoinder of causes of action; that the petition did not state facts sufficient to constitute a cause of action and that the petition showed on its face that the cause of action attempted to be pleaded was barred by the statute of limitations.

Irving and Justin Hill demurred on the grounds that the petition did not state facts sufficient to constitute a cause of action and it showed on its face that the cause of action attempted to be stated was barred by the statute of limitations.

All three of the defendants have appealed.

We shall examine first the argument of the bank. It argues first, the original petition showed on its face that several causes of action were improperly joined and that the amended petition did not remedy this. The basis of this argument is the allegation in the original petition in one place that it was the duty of the bank as trustee to advertise the stock for sale and to invite bids, but instead, the bank sold the stock to Justin Hill, as charged; and in another place, that Irving Hill and Justin Hill, as officers of the paper company, owed a duty to make a full disclosure to plaintiff whose stock they were trying to buy. A motion to require the plaintiff to elect between these two theories was sustained.

As the correctness of that ruling is not here for review we cannot say whether the ruling requiring the election was correct or not. The allegation with reference to the duty of the bank as trustee to call for bids before selling the stock was omitted from the amended petition.

It is well settled that an election of remedies may be required only when there is such inconsistency that the allegations in one cause of action must necessarily repudiate or be repugnant to the

other. (See *Taylor v. Robertson Petroleum Co.*, 156 Kan. 822, 137 P. 2d 150.) The test is whether but one satisfaction is asked. This is a case for the application of that doctrine. The plaintiff asked only one satisfaction. Proof that the bank, as trustee, failed to take proper steps to safeguard the welfare of its cestui que trust would in no way be repugnant to, or disprove the allegation that Irving Hill, who was president of the bank and also president of the paper company, failed to make the proper disclosure of the condition of the company to plaintiff. There is an allegation that all these actions of defendants had only one end, that is, to enable defendant Justin Hill to acquire the stock at less than its actual value. In order to state a cause of action against several parties it is only necessary to state facts from which the reasonable inference may be drawn there was a concert of action between them, which resulted in the wrongful act. (See *Nardyz v. Fulton Fire Ins. Co.*, 151 Kan. 907, 101 P. 2d 1045, and opinions there cited.) A reasonable inference may be drawn from the allegations of this amended petition that the bank through its trust officer wrote the letter, Justin Hill, who caused the letter to be written, Irving Hill, who was president of the bank and president of the paper company, all acted together, some doing one thing, some another, but all working to cause plaintiff to sell his stock for less than its actual value. Irving Hill, the president of the company, and Justin Hill, vice-president, owed plaintiff the duty to make a complete disclosure of the condition of the company. (See *Hotchkiss v. Fischer*, 136 Kan. 530, 16, P. 2d 531.)

We hold there was no misjoinder of causes of action.

Defendant bank next argues the petition shows on its face that it does not state a cause of action against it. The basis of this argument is that the action is founded on the letter of May 19, 1944, and that while the petition alleges certain false statements on the part of the bank, it does not allege that any of the statements in this letter were false—hence plaintiff is bound by the statements in the letter, and since the statements in the letter are not alleged to be false the petition fails to state a cause of action against the bank for fraud. It is not correct to say that none of the statements in the letter are alleged to be false. The letter stated "The stock has not been a dividend payer, earnings being used to develop business." The amended petition alleged the letter falsely stated the stock had not been a dividend payer because the earnings were being used to

develop the business. The letter stated a statement and audit had been made as of December 31, 1943. The amended petition alleged that the letter falsely stated that the value of the shares had been determined by examination and audit. The letter stated that increased liquidity over earlier appraisals justified a price of $107.50 a share. The amended petition alleged that the letter falsely stated the value did not exceed $107.50. The letter stated that after examination of the statement and audit, certain stockholders had offered their stock to Justin Hill. The amended petition alleged that this statement was untrue.

The truth of many of the pertinent statements of the letter were denied. It is not necessary that they all be false. It is sufficient if all of the false ones or any one of them be a part of what caused plaintiff to part with his stock. (See *Vernson v. Baker,* 124 Kan. 575, 261 Pac. 563; 26 C. J. 1165, sec. 76½.)

Moreover the amended petition alleged that all the parties conspired together to obtain the stock for Justin Hill without payment of an adequate price; that Justin Hill caused the letter to be written and the bank wrote it, and the plaintiff being without information relied on Justin and Irving Hill as officers of the paper company and the bank as trustee to inform them fully and completely. Under the statement of facts pleaded the bank is liable not only for its own acts but for the acts done by any other member of the conspiracy. (See *Mosley v. Unruh,* 150 Kan. 469, 95 P. 2d 537; also, *Holderman v. Hood,* 70 Kan. 267, 78 Pac. 838.)

In connection with this phase of its brief the bank points out the statement in the letter "Auditor's Report as of Dec. 31, 1943, is available should you wish to go into the matter." The bank argues that by this statement plaintiff was offered all the particulars which he claimed were concealed and thereby the plaintiff's case collapsed.

We cannot follow this argument. In the first place, it does not necessarily follow that the auditor's report tendered in the letter would have disclosed the true condition of the company or the falsity of the statements upon which the action is based. We are in the dark as to what this report would have shown and on a demurrer to a petition we cannot give it the force contended for by the bank. In the second place, plaintiff and the bank were not dealing at arm's length. The letter was from a trustee to one of the beneficiaries of the trust. The plaintiff was entitled to place complete faith and confidence in what the bank said. It was the bank's duty

to make a full and complete disclosure and it is liable for either misrepresentation or concealment. (See 37 C. J. S. 282, sec. 35, 23 Am. Jur. 966, sec. 159; also, *Hutto v. Knowlton*, 82 Kan. 445, 108 Pac. 825; also, *Hotchkiss v. Fischer*, supra.) Defendant bank insists the letter was clear and unambiguous and on that account must be interpreted according to the express words used. As a matter of fact, the letter seems to us to be a model of an effort to cause the reader to believe a certain state of facts without actually saying so. It falls far short of fulfilling the duty of the bank to make the full and complete disclosure required under the circumstances.

Defendant bank next argues that the original petition and the amended petition both show on their face that the action was barred by the statute of limitations. In this connection they point out first that the applicable statute is G. S. 1935, 60-306, subparagraph Third—"Within two years . . . for relief on the ground of fraud"; that this cause of action accrued on May 19, 1944, when the letter was written; the original petition was filed June 10, 1948, four years and twenty-one days after the alleged perpetration of the fraud and the amended petition was filed January 14, 1949, or four years, seven months and twenty-five days after the alleged perpetration of the fraud. The bank calls attention to the allegations of both petitions that the fraud was not discovered until June 12, 1946, and then points out its motion wherein it asked that the plaintiff be required to make its petition more definite and certain by stating what facts relied upon as constituting fraud or facts concealed from him by the bank were discovered by him subsequent to that date. The bank then points out that this motion was overruled and hence the allegations of the petition as to the discovery of the fraud must be strictly construed. The balance of the bank's brief on this point is a reiteration of its argument on the previous point, that is, the bank says since the petition did not allege that any of the statements in the letter were false plaintiff cannot be heard to say he subsequently discovered they were false.

We have already demonstrated that the letter and the allegations of the petition with reference to the letter are not subject to the construction contended for by the bank. The allegation of the petition with reference to the failure to discover the fraud is, as follows:

"That this is an action for relief on the ground of fraud and that this plaintiff did not discover any of the facts herein relied upon as constituting such fraud nor any other facts which, if investigated, would have led to knowledge of such fraud until subsequent to the 12th day of June, 1946. That this plain-

tiff was unable, by ordinary diligence, to discover said fraud by reason of the fact that the facts constituting such fraud were peculiarly within the knowledge of the defendants and were concealed by them from this plaintiff."

The bank argues in effect that the allegation in the above paragraph of the petition about concealment is contradicted by the statement in the letter tendering the audit. The bank argues that this letter put the plaintiff on notice of what the audit would show and the statute commenced to run then. In the first place, we are in the dark as to what the audit would show. We cannot state on consideration of a demurrer to a petition that it would enable the plaintiff to ascertain the true condition of the company. (See *Duffitt v. Tuhan,* 28 Kan. 208.) There we said:

"The statute requires such an action to be brought within two years, but further provides that the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. In a case like this, the statute does not begin to run until the fraud is discovered."

In the second place, the bank as trustee owed plaintiff more of a duty than the mere tender of an audit. In the third place, the letter was so ambiguous and replete with double talk that a jury might draw a reasonable inference therefrom that it was actually a means used by defendants to conceal their real purpose.

Defendant bank next argues its demurrer to the petition should have been sustained because the amended petition does not show on its face as a matter of pleading that it was not barred by the statute of limitations.

The bank argues that the plaintiff alleged a conspiracy for the first time in the amended petition filed January 14, 1949, and that plaintiff alleged in his amended petition that he did not discover the fraud until subsequent to June 12, 1946, or two years, seven months and twenty-five days after the discovery of the fraud. It argues then that the statute began to run not from the date of the conspiracy but from the date of the damaging acts or their discovery.

This argument depends for its validity on the statement that there was no charge of conspiracy in the original petition. We have demonstrated that this statement is not correct. There were allegations in the original petition from which a charge of conspiracy or concerted action on the part of all the defendants could be reasonably inferred. Moreover it is conceded by all parties that the statute began to run from the time when the fact a fraud has been perpetrated was discovered and not from the discovery of the particular ways and means used. The amended petition alleges there

was no discovery of any of the facts relied on as constituting the fraud nor of any fact which, if investigated, would have led to knowledge of the fraud until subsequent to June 12, 1946, and that plaintiffs were unable to discover the fraud because the facts constituting it were peculiarly within the knowledge and concealed by them. The circumstances under which the fraud was discovered need not be stated to avoid the statute. (See *Ryan, et al., v. L. A. & N. W. Rly. Co., et al.,* 21 Kan. 365.) There we said:

"The circumstances under which the fraud was discovered do not constitute any part of the cause of action, and need not be stated, even where a discovery must be alleged to avoid the apparent bar of the statute of limitations."

(See, also, *Condensing Co. v. Dawkins,* 86 Kan. 312, 120 Pac. 356, *Pickens v. Campbell,* 98 Kan. 518, 159 Pac. 21.)

The bank relies in a large measure on what we said in *Schulte v. Westborough, Inc.,* 163 Kan. 111, 180 P. 2d 278. In that case we held that in order to state a cause of action on the ground of fraud which will toll the running of the two-year statute of limitations, it is necessary that the petition clearly disclose the fraud was not and in the exercise of reasonable diligence could not have been discovered earlier than within the two-year period preceding the commencement of the action. This opinion is not in point here for the reason that the amended petition here alleges "this plaintiff was unable, by ordinary diligence, to discover said fraud by reason of the fact that the facts constituting such fraud were peculiarly within the knowledge of the defendants and were concealed by them from this plaintiff."

The element of concealment of the fraud was not in the petition discussed in the Schulte opinion.

We hold that the action against the bank was not barred by the statute of limitations. The bank's demurrer to the plaintiff's petition was correctly overruled.

We go now to a consideration of the appeal of Irving and Justin Hill. Irving Hill argues first that the petition discloses on its face it was barred by the statute of limitations. He argues that the original petition merely alleged that Justin Hill set out to buy the stock with Irving Hill's knowledge and that the charge of conspiracy was not alleged until the filing of the amended petition on January 14, 1949, which was more than two years after June 12, 1946, when it is alleged the fraud was discovered.

This argument is not good for the reason we have already stated

in this opinion that there was ample allegation in the original petition from which a reasonable inference of concerted action on the part of all defendants could be shown. The amended petition did not state a new cause of action against Irving Hill.

The Hills next argue that their demurrer should have been sustained because it did not contain a clear and concise statement of the facts without repetition and contradiction. The first phase of this argument is that the pleadings are not clear as to who is claimed to have held the stock at the time of sale, that is, whether it was held by the M. G. Bowersock Trust, The Lawrence National Bank, as trustee, or the plaintiff. We hardly understand just how the situation could have been stated any more clearly. Facts were stated from which it clearly appears that under an agreement for the extension of Mary G. Bowersock Trust, dated September 3, 1942, certain securities, including the 18 shares of paper company stock, in which plaintiff was beneficially interested, became immediately distributable; that the trustees of that trust did not distribute it to the beneficiaries entitled to the stock certificates and after the sales, about which plaintiff complains the stock was transferred to Justin Hill by the Mary G. Bowersock Trustees. The bank, as appears from its letter of May 19, 1946, treated the stock as if certificates had been issued in its name as trustee and were in its possession. It recognized the rights of plaintiff by the same letter. It stated acts on the part of all three defendants, which if proven, would entitle the plaintiff to damages.

The Hills next argue that the trial court erred in not requiring plaintiff to attach to the petition copies of the will of Margery B. Dalton, the trust deed of Mary G. Bowersock and of the trust extension agreement. None of these instruments are relied upon as evidence of indebtedness, so the statute does not require that they be attached. (See *Superior Oil Co. v. Blunk*, 161 Kan. 710, 171 P. 2d 658.)

We are not impressed with the argument of defendants that they needed copies of these instruments in order to prepare their defense, in view of the fact that Irving Hill was one of the trustees of the Mary G. Bowersock Trust, the bank of which he was president was trustee under the Margery Dalton Trust and in both capacities he knew all about the trust extension argeement.

Defendants, Irving and Justin Hill, next argue that their demurrer should have been sustained because neither one of them owned any

fiduciary duty to disclose to the plaintiff any facts concerning value of the paper stock for the reason that Loring Dalton was not a stockholder of the company and the stock was not purchased from plaintiff but was actually purchased from the bank. The answer to that is that plaintiff was beneficially interested in the stock and Irving Hill was president of the trustee bank and also of the paper company and Justin Hill, a director in the bank, caused the letter to be written. All the parties thought plaintiff had sufficient interest in the stock that they deemed it necessary to write the letter.

Irving and Justin Hill next argue their demurrer to the petition should have been sustained because the statute of limitations began to run from May, 1944, the date plaintiff knew of the fact that the Hills had failed to disclose to him the true value of the stock. G. S. 1935, 60-306, third subparagraph, provides that in actions for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the discovery of the fraud. The real fraud here was the purchase of plaintiff's stock at an inadequate price. The statute started running from the time plaintiff discovered that defendants by writing an ambiguous letter of half truths and some false statements caused him to sell his stock at less than its actual value. (See *Gates v. Kansas Farmers' Union Royalty Co.,* 153 Kan. 459, 111 P. 2d 1098.) The petition alleges that was subsequent to June 12, 1946.

Defendant, Irving Hill, next argues his demurrer to the petition should have been sustained because no cause of action is stated against him. In this argument defendant again maintains that the amended petition does not allege that any of the statements in the letter were untrue. We have heretofore demonstrated that this argument is not good. Nothing would be added to the effectiveness of this opinion by repeating what has been said.

Defendants, Irving and Justin Hill, next argue that their demurrers to the petition should have been sustained because the record discloses an allegation about nondiscovery of the fraud must be untrue. In this connection they point out that all such facts as the book value of the stock, current assets, fixed assets, profits and dividends would all be included in the annual report filed with the secretary of state. This argument is not good for the reason the annual report does not impart constructive notice to the plaintiff as to the condition of the corporation.

They next point out the offer of an audit in the letter of May 19,

1944. They argue that due diligence required plaintiff to take notice of the public record on one hand and the audit on the other. This argument is not good as far as the Hills are concerned for the same reason it was not good when advanced in behalf of the bank, as has already been demonstrated.

The same may be said of their argument that the petition did not state a good cause of action because it did not state the circumstances of the discovery of the fraud.

The judgment of the trial court is affirmed.

THIELE, J., not participating.

WEDELL, J. (concurring): I concur in the result. My views on what a petition must allege under our own decisions and the weight of authority generally, in order to toll the statute of limitations pertaining to fraud, G. S. 1935, 60-306, *Third*, are stated in a separate opinion in *Dalton v. Hill*, No. 37,893, this day decided, 169 Kan. 388, 219 P. 2d 710. What I have said there need not be repeated here.